Please support. The most important part of reviewing an risk claim is to follow the terms of the plan and in this case the initial denial said we don't think the they haven't measured anything. Of course in a psychiatric injury it's somewhat hard to find things to measure. But Dr. Verby did measure quite a few things which were submitted with the appeal and I just want to talk about one of those things because one of the things he inferred was a test of attention. And he found that my client in a 20 minute test of his attention could not pay attention for more than 45% of the test. Which places him in the ADHD category. And Dr. Verby has comparative statistics for non-ADHD controls. So my client is way off this handle. What do you assume for a moment, unless you assume for a moment that you're right, that there's plenty of evidence that your client was disabled. What's our standard of review? No. The standard of review is denial. Well, that assumes that California, that assumes that California law in this area is taken. Okay. So, the standard of review of the trial court should be denial. Yeah, you're right. We review the trial court denial. I'm sorry. You're entirely correct. What's the judicial standard of review of the denial? In the district court, it should have been de novo review for two reasons. Thank you. The first reason is we're missing the plan document. And under Firestone, unless the plan document reserves discretion and explains how to delegate that discretion to an insurer, the insurer doesn't have discretion. Now, the document that should have that is the PricewaterhouseCoopers LLP health and welfare benefit plan. Isn't the policy not to play a talk of discretion? Yes, but is the policy always a plan document? Or can it be a funding document? And if you don't have the health and welfare benefit plan to tell you what are the plan documents? I don't understand your position on this. Your position is that although the policy which is in the record gives discretion, that's not sufficient because in the absence of the plan being in the record, we can't tell whether there's discretion. Well, what you can't tell is does the plan reserve discretion and potentially have some procedure in it for delegating discretion to the insurer, and that process needs to be followed. So, you can't evaluate the issue without the PricewaterhouseCoopers health and welfare benefit plan, which in its number of responses, they were unable to produce. And it's not in the record. It was never produced. The second reason is that the California statute applies to the decision on the disappeal. Why wouldn't Delaware law apply? I'm sorry? Why doesn't Delaware law apply? Because the California statute specifically says, Well, the policy states that it's in effect irrespective of where the policy is issued. And California, under the McCarran-Ferguson Act, has jurisdiction over any insurance policy which is being used to insure California residence. In fact, they noticed that in the defense brief where they quoted the statute, they have the whole line in boldface except the part that says irrespective of where that's issued. So, your position is that, let's put aside whether the claim accrued for a second, so that the California statute would apply to this claim in the absence of a choice of law provision in the plan or in the policy. Your position is that the choice of law provision is overcome by the California statute? How specifically is that? I mean, you could guess on the irrespective. Well, the irrespective language to me suggests that we're not worrying about where the statute, where the contract was entered into. We have a provision that applies. But does the irrespective language override the policy, the agreement of the parties in the contract, if you will, that Delaware law applies? Well, if it doesn't, then the way to avoid all of these discretionary clauses, which this court in Standard Insurance v. Morrison said will apply to irrespective cases. Now, how do you know if they're avoided? Yes. Check. Delaware, yes. That's what parties to contracts do. Parties to contracts say, in the absence of an express provision, I'll be stuck with New Jersey law. We don't like New Jersey law, so let's opt for New York law. Our cases really don't address whether or not the California statute or the California statutes in general invalidate choice of law provisions. They just say that the California statutes apply in the absence of something else. I'm going to go back to the interpreter's question. Why shouldn't a choice of law provision apply? Well, first of all, I don't know why a choice of Delaware law would apply when Pricewaterhouse has no business in Delaware and Lida has no business in Delaware or no corporate. Does that matter for a contract on choice of law? I mean, can't parties contract for Florida law or Ohio law or whatever they choose to contract for? Okay. Well, here's what you run up against. If a policy offered, issued, delivered, or renewed, whether or not in California... That's the language of the statute. Oh, it's the statute. The language of the statute does not address choice of law provisions, does it? Well, it does say whether or not the policy... It doesn't say notwithstanding any contractual choice by the parties, which is what it would have to say to what you're asking it to do itself. I take your point that we don't apply choice of law provisions under circumstances where they're oppressive or the parties have no relationship to the parties and things like that. That's a separate issue. My question is, is there any authority for the proposition that the California statute invalidates otherwise valid choice of law provisions? I didn't state your position. He said here's what the statute says, but is there any cases to say that? No, there aren't any cases that specifically address that issue. Someone turn that off, please. You know, the way that the California statute is drafted is it applies to any insurance policy. That provides or funds life or disability insurance coverage for any California resident. That's what it applies to. That's not a valid saying, except if the policy was issued, you know, somewhere else. But let me address this slightly differently and see if you can help me. We have a policy, a real estate policy, and we don't have uniformity in the application of these policies because they apply to employees all over the country. The contracting parties get together and they say, gee, the best law for the best law, from the standpoint of the insurers, the workers, is Delaware law. And California later passes a restrictive statute that hurts employees. Would you then be saying that California will apply it? Under the current version of that, California has control over insurance of California residents. I would like to ask the inverse question of the question that Judge Hurwitz asked, and that is are there any California cases or any Ninth Circuit cases that hold that it is reasonable to override state insurance law expressly prohibiting such overriding by a choice of law provision? No. Any cases out there that would help us on that question? No. Thank you. Mr. Cadway, you have three minutes and 10 seconds. Would you like to save some of that for tomorrow? Yes, I'll reserve the remaining time. Thank you. Good morning, Your Honors. So I would like to first address what this Court has been focused on, which is the standard review that was applied by the Court when writing the decision on Linus. The decision in this case, and basically there are two reasons, independently why the District Court's decision to apply the arbitrary conclusion standard review should apply. And the first is that what the Court has alluded to is that the California law does not even enter into this to the extent that the law is not preempted, and California law could apply. It does not apply in this case because of the choice of law provision. So to answer Judge Lucero's question, if you will, what authority is there for the proposition that the parties can, in effect, do away with the same policy, state legislative policy, by looking at actual first law provision in a risky case? Well, I think the authority that we have is the authority of this Court, which first begins with the Wayne v. White Laboratories v. Kagan case, which states that choice of law provisions in a risk plan should be valid unless they are, at the time of contract, determined to be unreasonable or fundamentally unfair. That showing was not made here. Well, this actually wasn't in effect at the time of contract. It was not, but a similar provision or similar case then, if we advance 14 years, is the Cowden v. Automotive case, which is also this Court's decision. And that involved the insurance commissioner, who issued a letter stating that the choice of law provision should be stricken from ‑‑ I mean, I'm sorry, that the R.C. Lucrecia standards should be stricken, and the Court, again, upheld the choice of law provision in our risk plans. I think ‑‑ Let me, if anybody wants to follow up on that. What's the, like, if we were talking about personal jurisdiction, we'd be talking about minimum contacts. What are the minimum contacts here between this plan and Delaware? Really, the contact between this plan and Delaware is the fact that this is where the trust was set up. And so then, by that factor, this is a trust that many employers can't subscribe to, and in this instance, PwC did prescribe to this trust. And so that is why, you know, it basically elected Delaware Law to decide it's the location of the trust. And I want to ‑‑ May I ask a factual question, please? That is, are the parties in agreement, that is to say, are you specifically in agreement, that the portion of the plan under which Doe seeks benefits is funded by insurance, and that, or Cichowski, therefore, controls? Based on the supplemental provision that we provided, we do agree with that, Your Honor. Therefore, is it fair to say that you agree that Section 10110.6a is not preempted as applied? To an insured plan, I would say, yes, it does not. I mean, it is not preempted. I would, but again, in this instance, I believe that it is for two reasons. Let me ask you a couple of other quick questions. Okay. I'll leave time for my colleagues. The initial premise for the adoption of ERISA way back at the time of the adoption of the Organic Act was to create national uniformity in the issuance of employee benefits, welfare, and benefit plans both. And that, therefore, the ERISA would preempt state law. That was the original premise, correct? Yes. It was, but however, the statute specifically said that it did not wish to preempt the state laws that were funded by insurance, such as this plan is. Therefore, ERISA preemption does not apply, as you have candidly told us. Now, the trouble I have with your argument, and I want to give you an opportunity to persuade me that I'm perhaps wrong in my analysis, is that ERISA, you keep saying ERISA plans, but, in fact, for analytical purposes, this is not an ERISA plan. This is a plan in which ERISA does not preempt, and, therefore, 101106.8 does apply, and following the same decision tree, because that section applies, that section specifically provides for the standard of review, which is de novo review. I just have a hard time getting past that point, and so I want to give you an adequate opportunity to persuade me or to instruct me as to why I am wrong in that analysis.  First of all, this is absolutely an ERISA plan. It is a plan that. But for the preemption, it would be, but it is an ERISA plan that is preempted, that is not preempted, excuse me. Okay, there are some state laws that, if they are directed towards the truth, that are saved from preemption, but in this instance, first of all, which we've been talking about, California law does not apply here because there is a choice of law provision, and secondly, section 101.6 also does not apply because, in this instance, John Doe's, the decision on John Doe's claim was rendered on June 29, 2012, and the policy anniversary of this was on July 1, 2012, which means that this plan did not renew before Lino rendered its decision on plaintiff's claim, and under this. But on that point, Lino didn't inform Mr. Doe, so it's hard to figure out who to refer to. Mr. Doe is like to appeal after July 1, correct? That's absolutely correct, Your Honor, and the decision wasn't rendered on appeal until after July 1, but it's important. No, no, the decision, the denial, why doesn't the denial, if there were a case on a date from the time that Mr. Doe was told, you've been denied benefits and you have a right to further administrate it, what are you going to do? Well, in this instance, the decision was given to his attorneys who knew who he, you know. The decision given to his attorney before July 1 was not, he says, fine, you have a right to appeal, it was just his attorney knew he lost. Your Honor, the attorneys know how much of their right to appeal to Mr. Doe. Absolutely, and also, I mean, he was represented by an attorney in this instance on, the decision was rendered on June 29, and based on this court's decision in Gross-Solomon, this court did not draw a distinction as to when or not, you know, the decision was received. It basically found that the claim accrued when the initial decision was rendered by the insurance company, which happened in this case. I have another question for you, Alexis, and I want you to assume for the sake of this question that De Novo's standard of review applies to the denial of decision on the parents. What should be the result, and why? Can you speak again? I'm sorry. Well, I want you to assume, just for the sake of this question, that you lose on the issue of how the denial of decision is reviewed on the parents, whether for abuse of discretion or De Novo. So if we were to review De Novo, what should be the result of the claim on the parents, and why? I think that the court can tell based basically on how, you know, this was argued at the lower court and argued before this court, is that we believe that we prevail on either the De Novo or arbitrary caprice standard of review, and we actually moved in the alternative before the trial court because we do believe that the facts of this claim are so strong and that Doe is trying to obtain benefits to which she's not entitled. And you rely largely on Dr. Goldman's report? We do rely a great deal on Dr. Goldman's report, but that's not all. We also rely on the fact just if you, and what Dr. Goldman relied on was everything that he reviewed. You know, he looked at Dr. Giarratino's records, which show that he has mild symptoms and that he has a stable effect time and time again. Dr. Kirby did this testing in early March, but by late March, for the first time, John Doe had been prescribed Arborn's to treat his ADHD. From the moment that John Doe went into rehab on December 21st of 2011, he had not used Meden, he hadn't used cocaine, he hadn't used alcohol, all of his substance abuse issues were in remission. So this policy has a six-month limitation period. So probably for the first time since John Doe started working at PwC in 1985, he was actually not using. He was, again, beginning in March being treated for his ADHD. And it defies logic to claim, as they have, that he was working and disabled for 26 years when we're talking about a man who was an accountant, he was a big partner, he received two promotions all during this 20-plus year period. And he was earning $1.3 million a year. There is no way that you can argue that there is any disability involved there. I mean, was his job probably harder for him? Absolutely. But was he performing his job? Absolutely. And if you go back and you look at Dr. Doe's records, if I may, the trial court reviewed the action of the trustee under an abusive discretion standard. Did it not, under Montour? Yes, it did, Your Honor. And in answer to Judge Graber's question,  because her question was, if you had, if the, well, if the court had reviewed the decision of the trustee under a de novo standard, all we could do is speculate as to what the district court would have done, because it didn't do that. And it seems to me that our decision would have to be based on speculation and that the more rational thing would be just to remand it to the district court to allow you to make the type of argument that you're making to the district court and to have the district court, as an initial matter, review the matter under the correct standard. Thus, that is, it assumes the application of the statutory section, of course. Yes, Your Honor. I understand what you're saying, but I also think that there is enough information in the record before this court that this court can't affirm the district court on any ground that is present in the record. Well, we would be making the same decision to district court. In other words, we would be making it on the record that it was before the district court. We wouldn't be at the benefit of the district court's thinking, but there's no fact-finding to be done, so we would be looking at this record and seeing whether de novo, what result would be reached. And we would review any decision de novo again anyway. If the district court made a different decision under the de novo standard, we would still review that de novo again, so we're back to the same place we would be right now. I was going to ask Peter to return to the question just to see if I understood, because I'm not sure. I'm sorry. I understood the answer. I think he was saying, and I'm just going to say what he's been telling us, that California has a law that says, in the absence of, California has a law that says it applies to every policy issue in the state. Every policy issue in the state is a choice of law and definition. I mean, I've never seen a choice policy law. So in the absence of preemption, why doesn't the California statute apply? In the absence of preemption, why doesn't it? Right. Everybody agrees there's no preemption. Everybody agrees the California statute is not preempted. So put aside the approval thing for a moment. In the absence of preemption, why doesn't the California statute apply? The argument is, well, we have a choice of law provision in our policy, but every policy is a choice of law provision. So wouldn't that mean the California statute only applies in those instances where the parties chose the California law? Yeah, but in this instance, I mean, this statute was carefully worded and carefully drafted, and the statute could have easily said that it trumps the choice of law provision. Well, but what you're really saying is what your opponent is arguing. The California statute, notwithstanding your ability to apply California law to every insurance policy, it's the same. Only applies when the insurer is lax and doesn't try to conform your choice of law provision in the policy. That seems fairly restrictive, doesn't it? What the other state is, is that there's an important content here that's kind of being overlooked, and that is the party's right to contract. I mean, we're talking about an insurance company, and we're talking about employers that also have a lot of weight. They are able to contract with these plans, and if they wanted to include a choice of law provision that was California, then that would likely be able to be negotiated. But this court, the Supreme Court, all of them have given a lot of latitude to the parties to contract to select the choice of plan. I know we're running short on time. I want to ask you a question about that. I mean, the cases that we dealt with in the past is when a court came with a statute that says, in effect, notwithstanding any clause to the contrary, or outstanding any clause to the contrary, this applies to any of the statute limitations and things like that, or reservation between two states laws. Here we have a statute that says, notwithstanding any clause to the contrary. Doesn't that mean that statute is not preemptive? Why should it? Why should there be a choice of law decision? One clarification, Fenberg did deal with a thing that applied directly to insurance companies, which was the choice of law in a letter from a commissioner. So the Fenberg decision did apply with that, even though it's not really highlighted in the facts as much, but that is the facts of the case if you look at the briefing on that case. But what I do think is important, again, is there is, as far as I know, there is no statute. It's the 9th Circuit. It's 14 years after Wayne Laboratories. But, again, I think the thing that is important, well, first of all, I want to answer your question. There is no, as far as I know, any 9th Circuit law that addresses the statute that specifically mentions California residents. That is correct. But what I think is important, again, is in ARISA, you know, we've got the importance of our plans. We've got the ability to contract. There was also just as far as there was a case from the 7th Circuit in Ray Mathieson just came out that talked about form selection clauses and that contracts can have those. We have a 28-page letter with the citation. Pardon? I do have a citation. Have you sent it in 28 pages? No, I haven't. Would you at least include a copy of the citation with the proposal counsel and with the clause? Certainly. Thank you. But the thing about that case that was interesting is that, again, it was talking about the ability of the parties to contract and how important that is. I guess you're right, too. My question is that if the parties have the ability to contract, it doesn't matter how expressive or stable it is. They can contract away from it. Well, I think in this instance, I don't think that the state law is expressive. I understand. That was your first argument. But your second argument is the parties have the ability to contract away from it. It doesn't matter how expressive it is. So if California law had said a choice of law provision that chooses any law other than California in an insurance contract entering into the state is invalid, your position would be the parties could nonetheless choose to contract. In that instance, I'm not sure that I would maintain my position to that extent. Counselor, you've exceeded your time. I finished answering Judge Horowitz's question earlier. I'm sorry? You didn't finish answering Judge Horowitz's question earlier, did you?  I'm not sure that I would maintain my position. But in this instance, the statute that is before us did not go as far as your hypothetical. I mean, it talks about California residents, but it does not, in any way, void choice of law provisions. Thank you. Thank you. Mr. Padway, you have seven more. We're almost out of time. I think there are two short points that I'd like to make, and then I'll be happy to take any questions. In the original denial letter that's in the Tax Service of the Record, at page 249, in a most polite way, they have taken the issuance of that letter somehow, because that was the day before the statute, in fact, that that would take us out of the statute. The denial letter says to submit your appeal letter to us within 180 days of your receipt of this letter. And that is very standard language in every denial letter I've ever seen. And I would take it from that language that the decision is being made not when it's mailed, but when it's received. If it's mailed on June 29th, it can't be received before the policy number of three weeks. Any evidence in this record when it was received? I'm sorry? Is there any evidence in this record when it was received? No. But as I recall, June 29th was like a Friday. Since we have to have arrived on Sunday, there's no mail delivery. But I think that the correct answer is that it runs from the decision on appeal, because that's when the administrative process is finished. So let me ask you the question that I ended up with your comment about. Could every state pass a law? There's an email preemption, which we were concerned about, that says we don't care what the choice of law and provision is, and in an arrest policy, our state law would apply. Absolutely. Does that go against the principle that Judge Lozera was talking about, uniformity? One of the reasons for arrest law is uniformity. I think the answer is yes, because the requirement of uniformity is basically overcome by allowing the discretion to remain in the individual states in which insurance is issued. In this case, the parties bargained for insurance in California. They bought insurance in California. They paid for insurance in California. And the question I keep coming back to is the question is, is it reasonable to allow somebody coming into an individual state to sell insurance in that state, to overcome the insurance laws of that state by simply inserting a provision in the policy dictating that the law is going to be governed by the state of Delaware, which would overcome all of the California statutory scheme. I find that unreasonable in my mind, but I stand to be persuaded. I've got an open mind on the question. I think you don't really want to persuade judges. I think the reason insurance gets saved from preemption is because we have a really long tradition that we don't have federal regulation of insurance in this country. We do it state by state, and, you know, there are a lot of problems that that creates. They were talking about selling it on state lines in the new health care limit, but the tradition is insurance gets regulated at the state level, and every state has jurisdiction over the insurance that's sold in that state in terms of their citizens. So, yes, it affects uniformity, but, you know, when you save part of the, when you save the insurance statutes from preemption, that's the actual effect. And it's not an administrative issue. How does a plan administer claims differently if they're going to be reviewed to no avail or deferred? The plan administrator has exactly the same fiduciary responsibility. And, in fact, I know there are a number of cases where the courts have justified deferential review on the basis that it's not a substantive difference from the I've been fighting about it for many years, but it's not that the plan has to do something different. Your time has expired. Would you like to sum up in a sentence or two? I'm sorry? Your time has expired, and you may sum up in a sentence or two. If I may take 30 seconds on one point that we have not argued, because it's an odd point. One of the feeding doctors, after the record closed, was found to be selling drugs. He was arrested. He lost his license. We're aware of that. What is your view of what effect that has on the medical records and on the ultimate decision? Well, what we did is I put a footnote in my receipt. I'm not going to rely on anything that's the doctor did. But that doctor was favorable to your client, was he not? Well, I mean, so how does he or I guess that, inartfully worded my question, what's the prejudice to your client from that material being in the record and having been disabled? Did you suffice disabled? Well, I mean, I don't think that there is any prejudice to it, but I was a little concerned that the district court said, we're not going to allow the fact that this arrest and so forth into the record because it came into it. And just as a matter of professional practice, I don't want to walk into a federal court and be arguing something from that kind of a witness. I think we understand your position, Counselor. You've exceeded your time by several minutes. Thank you. The case just argued is submitted, and we appreciate very much the arguments that both of you have made today. They've been very helpful. With that, we're adjourned.
judges: Lucero, Graber, Hurwitz